*826 OPINION OF THE COURT
Maria Milin, J.
Petitioner commenced this nonpayment proceeding against Leslie Powell (respondent) who resides in apartment 2E (apartment) in the building located at 1925 7th Avenue in Manhattan (building). The petition alleges rent owed for April 2002 through June 2002 at a monthly rate of $1,302.
Respondent took occupancy of the apartment in January 2000. Respondent alleges that in April 2000, while she was eight months pregnant, she was informed by other tenants that there were instances of lead poisoning of children residing in the building and that the owner was aware of this situation. Respondent claims that she consequently contacted the building manager who informed her that she need not worry since her apartment was newly renovated. In November of 2002, respondent contends that her physician diagnosed one of her children as highly lead poisoned. A visit conducted on November 13, 2002 by the Department of Health and Mental Hygiene (DOHMH) resulted in a finding of lead present in the apartment.
This case first appeared on the court’s calendar in August 2002. Respondent appeared unrepresented by counsel and the parties entered into a stipulation whereby the rental amount demanded by petitioner was put in dispute and the parties were to resolve this issue within 30 days; repairs were also listed on the stipulation with access dates and a completion date. Respondent restored the case upon petitioner’s alleged failure to address the repairs. The case was then adjourned several times. During this time, Judge Jimenez monitored the repairs undertaken via daily progress reports submitted by respondent to the court for the period beginning September 24, 2002 and ending October 29, 2002. The reports provide detailed descriptions of the repairs addressed, contact made — or lack thereof — with petitioner’s super and management personnel. On November 4, 2002 a stipulation was entered into adjourning the case and listing repair conditions that petitioner agreed to address.
Respondent then retained Northern Manhattan Improvement Corporation Legal Services to represent her and on December 18, 2002, she moved to file an amended answer. The substance of the motion was adjourned but the parties stipulated to petitioner’s claim of $6,813.65 due and owing in rent through the end of December and for the provision of additional *827 access dates for completion of repairs. On the return date the case was adjourned again and marked ready for trial. Respondent then made a motion on February 4, 2003, seeking that the “final for trial” marking be set aside, for leave to file an amended answer and for disclosure of the petitioner with respect to prior knowledge of lead hazards in the apartment and the building. A stipulation dated February 11, 2002 followed that provided for additional access dates, set up a motion submission schedule and adjourned the case again.
All the while, respondent continued to submit daily progress reports to the court for the period February 17, 2003 through March 14, 2003. These reports indicated the exact times respondent allegedly provided petitioner with access. Pursuant to a court order dated April 14, 2003, the case was adjourned conditionally to April 21, 2003, assuming the lead hazard was abated, an inspection done and respondent restored to possession. If respondent was not restored to possession, the parties were to appear before the court on April 21st; if respondent was restored, the parties were to return to court on April 28th to deal with what remained of the motions.
Apparently, the lead was not completely abated, respondent was not restored to possession and the parties were back in court on April 28th. An intervention report by the DOHMH dated April 11, 2003 indicated that the apartment was not properly cleaned. As a result of a conference held with the court, the parties entered into another stipulation dated May 6, 2003, whereby petitioner agreed to complete the clean up and respondent agreed to remain out of the premises and provide access. Petitioner was to notify respondent when the clean up and testing was complete. Respondent then moved for contempt against the petitioner alleging the latter failed to comply with the May 6, 2003 stipulation. The DOHMH conducted a final test on May 19, 2003 and found that the apartment was clean.
The court will now address respondent’s motion seeking to file an amended answer and for leave to conduct disclosure of petitioner with respect to prior knowledge of the lead hazard.
It is well established that leave to amend is freely given and is within the court’s discretion. (Duffy v Bass & D’Allesandro, 245 AD2d 333 [2d Dept 1997].) Leave to amend a pleading should be granted in the absence of prejudice or surprise to the opposing party. (Murray v City of New York, 43 NY2d 400 [1977].) Petitioner has failed to demonstrate that an amendment would be prejudicial to its position. This is so particularly in light of the procedural history of this case.
*828 Petitioner, in opposition, seeks dismissal of respondent’s third affirmative defense, and the first, fourth and fifth counterclaims and denial of respondent’s motion for disclosure. The respondent had agreed, on a prior date, to withdraw its third affirmative defense and fourth counterclaim of retaliatory eviction. Thus, the remaining issues in contention are respondent’s first and fifth counterclaims.
Respondent’s first counterclaim seeks reimbursement for repairs that she undertook after she allegedly notified the petitioner of their existence and petitioner did not address them. She specifically seeks $2,500 pursuant to the “repair and deduct” doctrine.
Respondent’s fifth counterclaim seeks damages in the amount of $45,000, equivalent to the amount of rent paid for the apartment and $135,000 in treble damages and for an award of attorneys’ fees based upon petitioner’s failure to comply with applicable lead disclosure laws.
Respondent argues that these claims are appropriate because they are inextricably intertwined with petitioner’s case. A counterclaim which is not related to or provides a defense to the petitioner’s claim for rent should be severed from a summary proceeding. (Coronet Props. v Lederer, NYLJ, Feb. 21, 1987, at 12, col 2 [App Term, 1st Dept]; Hymowitz v Narkiewicz, NYLJ, May 13, 1983, at 6, col 2 [App Term, 1st Dept].) However, counterclaims which are inextricably intertwined with the landlord’s claim for rent are appropriate in a summary proceeding. (Amdar Co. v Hahalis, 145 Misc 2d 987 [App Term, 1st Dept 1990].) In this proceeding, both counterclaims are inextricably intertwined with petitioner’s claims herein.
Specifically, the first counterclaim of “repair and deduct” goes hand-in-hand with the defense of warranty of habitability, respondent’s fourth affirmative defense. Respondent argues that seeking an offset for repairs she undertook due to conditions that affect her warranty of habitability are inextricably related to petitioner’s claim for rent and her warranty of habitability defense.
Respondent’s fifth counterclaim argues that petitioner had a duty to disclose to the respondent prior to the execution of a lease whether it had any knowledge of lead-based paint hazards in the apartment pursuant to 24 CFR 35.88 (a). Pursuant to the Lead Paint Act (42 USC § 4821), United States Department of Housing and Urban Development (HUD) promulgated regulations that prohibit the use of and presence of lead-based paint, namely, 24 CFR part 35. The latter lists *829 the disclosure requirements imposed on sellers and lessors which loosely include providing prospective buyers/lessees with an Environmental Protection Agency (EPA) approved lead hazard information pamphlet, a lead warning statement, and a statement disclosing any known lead-based paint or lead hazard. (24 CFR 35.88 [a].) Respondent contends that petitioner’s failure to disclose this information rises to a breach of the parties’ rental agreement and has interfered with her quiet enjoyment of the apartment in that she has been displaced from the apartment for several months.
Petitioner argues that this court lacks jurisdiction over this counterclaim because only federal courts may entertain causes of action that arise from violations of 24 CFR part 35, subpart A. Petitioner posits that the treble damages sought by respondent must be brought in federal court pursuant to 28 USC § 1355 (a) which states: “The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title.” Petitioner cites Coronet Props. v Lederer (NYLJ, Feb. 21, 1986, at 12, col 2 [App Term, 1st Dept]). However, as respondent correctly points out, the Coronet case is distinguishable in that the counterclaim alleged there sought damages for “mental distress and anguish” and was, therefore, appropriately severed.
Based upon the foregoing, respondent’s first and fifth counterclaims set forth valid claims for relief and are appropriately interposed in this nonpayment proceeding. Accordingly, respondent’s motion is granted to the extent of allowing respondent leave to amend and file her amended answer, absent her third affirmative defense and fourth counterclaim nunc pro tunc. Additionally, petitioner’s reliance on New York City Hous. Auth. v Alexander (NYLJ, July 18, 1996, at 21, col 3 [App Term, 1st Dept]) is misplaced inasmuch as that case involved the applicability of the defense of breach of warranty of habitability to a summary holdover proceeding.
Respondent argues that this court has jurisdiction over this counterclaim because it does not seek a penalty as defined under 28 USC § 1355 (a) because those remedies are specific to EPA and HUD. Rather, respondent states that this is a private cause of action seeking recovery of treble damages, costs and attorneys’ fees. When a party seeks the dismissal based on fail *830 ure to state a cause of action, the court need only look to whether a cause of action has been pleaded and not pass on the merits. (Rovello v Orofino, 40 NY2d 633 [1976].)
Respondent moves for an order allowing her to conduct discovery with regard to her fifth counterclaim. It is well settled that when the information sought is not known by the party requesting discovery but is within the knowledge of the other party, the awarding of permission to conduct discovery in a summary proceeding is appropriate. (Savarese Real Estate v Stone, NYLJ, June 6, 1985, at 6, col 2 [App Term, 1st Dept]; 125 Church St. Dev. Co. v Grassfield, 170 Misc 2d 31 [Civ Ct, NY County 1996].)
In this matter, whether or not petitioner had prior notice as to the presence of lead hazards at the building and respondent’s apartment is information uniquely within the knowledge and control of petitioner. Accordingly, on that basis, respondent shall be allowed limited disclosure in order to discover this information. Respondent is permitted leave to serve a demand for documents on the petitioner within 30 days of the date of entry of this order unless the parties otherwise agree.
Accordingly, for the reasons stated above, respondent’s motion is granted to the extent set forth above.